UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FACTORY SALES AND ENGINEERING, INC., d/b/a FSE ENERGY, a Louisiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY, a Rhode Island Corporation; and NIPPON PAPER INDUSTRIES USA CO., LTD, a Washington Corporation,<br><br>Defendants. | NO.<br><br>COMPLAINT FOR DECLARATORY RELIEF AND MONETARY DAMAGES<br><br>JURY DEMAND |

COMES NOW, Plaintiff Factory Sales and Engineering, Inc., d/b/a FSE Energy ("FSE") and for its complaint against Defendants, alleges as follows:

### I. PARTIES

1. FSE is a Louisiana corporation with its principal place of business in Covington, Louisiana. FSE is authorized under the laws of the State of Washington to conduct business in Washington. FSE has fulfilled all legal and contractual prerequisites and conditions for the filing of this Complaint.

2. FSE manufactures, erects and services complex heat and energy equipment throughout the world for a broad range of industries. FSE performed these types of services

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 1

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

in the Western District of Washington.

3. Factory Mutual Insurance Company ("FM" herein) is a Rhode Island Corporation with its principal place of business in Johnston, Rhode Island. FM is authorized to do business in the State of Washington, and issued a policy of insurance to insure the property of defendant Nippon Paper Industries USA Co., Ltd., (NPI) in Port Angeles, Washington, in the Western District of Washington. FM performed investigation of the claims for insurance benefits giving rise to this action from its office in Bellevue, Washington.

4. NPI is a Washington Corporation which owns and operates a biomass cogeneration facility located in Port Angeles, Washington. This facility supplies (1) power for the operation of an NPI-owned paper manufacturing facility and (2) power which can be sold as renewable energy. NPI does business in the Western District of Washington.

## II. JURISDICTION AND VENUE

5. The matter in controversy in this action exceeds, exclusive of interest and costs, the sum of $75,000. The court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332. The events which give rise to this dispute took place in the Western District of the State of Washington. Venue is proper pursuant to 28 U.S.C. §1391(b) (1)-(2). There is complete diversity of citizenship between plaintiff and all defendants.

## III. THE CONTRACT

6. NPI, as Owner, and FSE, as Contractor, executed a contract on November 3, 2010 (the "Contract"), for the "design, manufacture, shipping, erection and successful testing of one (1) 225,000 PPH Biomass Fired Boiler with auxiliary equipment at NPI's facility in Port Angeles, Washington." The contract called for FSE to affix and install the equipment into the NPI plant such that it became part of the plant. The boiler and auxiliary equipment at issue in this suit became real property at the Port Angeles facility prior to the occurrence of the property damage which is the subject of this suit. The NPI/FSE contract required fabrication of a "mud drum" to be fabricated off site from the Port Angeles NPI facility, and

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 2

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

then shipped to Port Angeles and installed into the boiler facility constructed by FSE for NPI. FSE engaged Chanute Manufacturing Company ("Chanute") to perform this specified part of the Work (mud drum fabrication) required under FSE's Contract with NPI.

7. The contracted price was $26,976,000 for the mechanical or physical components of the boiler system, with installation and erection services to be provided by FSE on a cost-plus basis, estimated at $8,900,000, for a total estimated contract price of $38,876,000. Because FSE provided the installation and erection services on a cost-plus basis, and because there were other items or components of the pricing – including the pipe rack, the ammonia system and the tank yard – that were agreed to on a time and materials basis, the total amount invoiced by FSE to NPI came to $43,742,361.08.

8. The NPI/FSE contract contained several express risk allocation provisions. Specifically, the contract obligated NPI to purchase and maintain property insurance applicable to the work "without optional deductibles." The contract further required that the insurance "shall include the interests of the Owner, Contractor and Subcontractors." The contract further provided that if the insurance procured by NPI required deductibles, "the Owner shall pay costs not covered because of such deductibles."

9. The NPI/FSE contract also contained another risk allocation provision, referred to herein as the "Waiver of Claims" provision. In this provision, NPI and FSE waived all rights against each other and any of their Project consultants, subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss "to the extent covered by property insurance obtained pursuant to the Contract Documents or other property insurance applicable to the Work **WHETHER CAUSED IN WHOLE OR IN PART BY THE FAULT OR NEGLIGENCE OF THE OWNER, CONTRACTOR, SUBCONTRACTORS, SUB-SUBCONTRACTORS, SEPARATE CONTRACTORS, OR ANY OF THEIR AGENTS, OR ANYONE EMPLOYED DIRECTLY OR INDIRECTLY BY ANY OF THEM OR ANYONE FOR WHOSE ACTS ANY OF THEM MAY BE LIABLE."** (Emphasis in original contract). This waiver expressly

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 3

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

includes damages consisting of loss of use and/or included within Additional Coverages of insurance issued by FM.

10. Separate and apart from the risk allocation provision described above, the contract also included a risk allocation provision specific to the owner's loss of use of property to be furnished and installed by FSE, as well as other property owned by NPI. This provision obligated NPI to "purchase and maintain at its expense such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards howsoever caused." The provision also expressly waives claim by NPI for loss of use and consequential damages: "The Owner waives all rights of action against the Contractor, Subcontractors and Sub-subcontractors for loss of use of the Owner's property including consequential losses due to fire or other hazards, howsoever caused."

11. As a result of its contractual commitment to insure the interests of contractors and subcontractors in the Work, NPI was legally liable for damage to the Work until final payment was made to FSE. To satisfy the insurance procurement provision of its contract with FSE, NPI purchased and maintained a policy of insurance with FM insuring property which included the Work to be performed by FSE and its subcontractors, including the "mud drum" fabricated by Chanute.

### IV. THE FM POLICY

12. FM issued and delivered Policy No. XH220 ("the Policy") to NPI in Washington.

13. The Policy insures property located in Port Angeles, Washington, and is insurance subject to RCW 48.01.020. The events which gave rise to the property damage at issue in this suit, together with all claims made by all entities as a result of those events, constitute a "transaction" within the meaning of RCW 48.01.020 and 48.01.060.

14. The Policy expressly insures "Real Property, including new buildings and additions under construction, in which the Insured has an insurable interest."

15. The Policy expressly insures the interests of contractors and subcontractors in

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 4

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

insured property during construction. The insurance provided that the insured interest of contractors and subcontractors is limited to "the property for which they have been hired to perform work…" FSE is insured and/or is an intended third party beneficiary under the Policy. FSE has an insurable interest in the damaged property, and has standing to seek declaratory judgment regarding coverage for such damage.

16. The property which is the subject of this suit was in fact property for which FSE was hired to perform work for NPI.

17. The Policy contained an express waiver of subrogation clause which was intended to, and did permit NPI to provide FSE with the waiver of claim provisions described above. Referring to itself, FM promised not to acquire any rights of subrogation NPI had expressly waived prior to a loss: "The Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the insured's rights under this Policy."

## V.   THE PROPERTY DAMAGE

18. Within the temporal term of the Policy, and before all construction called for in the FSE/NPI contract was complete, but after NPI had put a portion of the boiler facility to use, physical loss or damage occurred to covered property (including the mud drum fabricated by Chanute) owned by NPI in which FSE had an insurable interest and for which FSE was insured under the terms of the policy.

19. The damage to property owned by NPI is expressly subject to the waiver of claim provisions described above.

20. One of the policy benefits conferred upon FSE by FM was that FM would not acquire any rights of recovery against FSE which NPI had expressly waived prior to the loss described above.

## VI.   THE CLAIM OF NPI AGAINST FSE

21. In a related proceeding before this Court under Cause No. 3:14-cv-05899 RJB, NPI has filed a counterclaim for monetary damages against FSE for the physical loss

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 5

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

described above, together with consequential damages stemming therefrom. The counterclaim is attached hereto as **Appendix A**.

22. The physical damage described by NPI in its counterclaim filed in Cause No. 3:14-cv-05899 RJB constitutes direct physical loss to covered property by a covered cause of loss as set forth in the Policy.

23. Both NPI and FM determined the mud drum was a total loss as a result of widespread cracking to the boiler.

24. Boiler cracking is a Covered Cause of Loss under the policy.

25. Boiler cracking is a non-excluded loss under the FM policy.

26. NPI made claim to FM for, among other things, the same damages which are the subject of its counterclaim against FSE.

27. The physical damage and resulting monetary damages described by NPI in its counterclaim filed in Cause No. 3:14-cv-05899 RJB constitutes damages for which NPI waived claim against FSE and Chanute in its contract with FSE.

28. Any rights of recovery arising out of physical damage and resulting monetary damages described by NPI in its counterclaim filed in Cause No. 3-14-cv-05899 RJB are rights of recovery FM expressly waived in the Policy.

29. FM has refused to confirm unconditionally that it does not claim to be entitled to subrogation against FSE.

30. NPI's counterclaim against FSE implicates FSE's insurable interest in the property owned by NPI and constructed by FSE, which was damaged and which is insured under the Policy.

31. By letter of September 29, 2014, FM determined that Chanute was a "subcontractor" of FSE as the term "subcontractor" is used in the FM policy. FM's normal course of business interpretation of its own policy is binding upon it, and Chanute in fact qualifies as a "subcontractor" as FM uses that term in its policy.

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 6

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900 F. 206.344.7400

## VII. FSE'S CLAIM TO FM

32. FSE has made claim to FM under the policy. FM has refused to recognize FSE's interests in the Work as insured under the policy such that FSE is insured thereunder. FSE has demanded that FM acknowledge it has not and will not seek subrogation against FSE, and FM has refused to make such acknowledgement.

## VIII. FM'S INVESTIGATION INTO THE CLAIM

33. Pursuant to WAC 284-30-370 and other applicable Washington law, FM was obligated to conduct an investigation into the claim by NPI and FSE for damage to the Work.

34. The investigation was required to include "all activities of the insurer directly or indirectly related to the determination of liabilities under coverages afforded by an insurance policy or insurance contract."

35. FM was obligated to conduct its investigation without regard to any financial interest it had in the determination of its own liabilities under the insurance contract it issued.

36. Under its own internal procedures, under industry practice, and under Washington law, FM was required to conduct its investigation while giving equal consideration to the interests of all those whose interests were insured under the policy.

37. FM engaged attorneys Scott Stickney and Maria Sotirhos to perform some of the "activities…directly or indirectly related to the determination of liabilities under coverages afforded by" the policy it issued.

38. FM, through one or more of those that participated in its "investigation", consistently preferred FM's own financial interests over those of NPI, FSE and Chanute.

39. During their performance of "activities…directly or indirectly related to the determination of liabilities under coverages afforded by" the FM policy, Mr. Stickney and Ms. Sotirhos acted as advocates of FM, consistently treating the interests of FSE and Chanute adversarially, prior to denying coverage for FSE's insured interest in the Work.

40. Mr. Stickney and Ms. Sotirhos conducted their own activities "directly or

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 7

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

indirectly related to the determination of liabilities under coverages afforded by" FM in such a fashion as to promote the financial interests of FM at the expense of the financial interests of FSE.

41. FM failed to adopt or maintain standards for the prompt investigation of claims which assured objectivity of all those that performed "activities…directly or indirectly related to the determination of liabilities under coverages afforded by" the policy it issued.

42. FM legal representative Scott Stickney and NPI legal representative David Brenner, by their words, conduct, and action, cooperated with one another to defer a "prompt" conclusion to the FM investigation for the purpose of attempting to deprive FSE of the protections NPI promised when it agreed to the risk allocation provisions of the NPI/FSE contract. Despite having had adequate time to conduct and complete its investigation into coverage for the boiler cracking damage at the NPI plant, FM has deliberately failed to complete its investigation of coverage for the boiler cracking damage at the Port Angeles plant, so as to facilitate NPI's prosecution of claims for damage waived by NPI under the Waiver of Claims Provision of the NPI/FSE Contract. FM's delay is strategic. NPI is complicit in that delay. FM and NPI acted in concert within the meaning of RCW 4.22.070. NPI has tortiously interfered with FSE's rights under the FM policy.

43. FM was obligated under WAC 284-30-340 to maintain a claim file.

44. FM was obligated by its own procedures, industry standard and Washington law to maintain its claim file such that it contained "all notes and work papers pertaining to the claim in enough detail that pertinent events and dates of events can be reconstructed."

45. At some point during its investigation into NPI's and/or FSE's claim for coverage arising out of the boiler cracking, FM determined it would attempt to use an alleged "client-attorney privilege" to veil from NPI, FSE and others whose interests were insured under the policy, various activities "directly or indirectly related to the determination of liabilities under coverages" it issued. Each and every one of these documents was, under WAC 284-30-340, subject to examination by the Washington Insurance Commissioner, and

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 8

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

thus FM had no reasonable expectation of confidentiality with respect to them.

### IX. FM Decides it Will Determine Its Own Liability in Accordance With an Interpretation of Its Policy It Knew Had Been Rejected By the Washington Supreme Court in *Vision One v. Philadelphia Insurance*

46. FM was responsible for the wording of its own policy.

47. FM wrote its ensuing loss clause such that "damage not excluded that… results" from human acts, omission or fault is covered.

48. At the time FM issued its September 29, 2014 coverage position letter, it was aware of the Washington Supreme Court's decision in *Vision One v. Philadelphia Insurance.*

49. NPI specifically enumerated cracking of six designated pieces of property as excluded under its policy. Boiler cracking was not on the excluded list.

50. The failure of FM to exclude boiler cracking was neither a typographical error nor inadvertent.

51. FM was aware of the following ruling (in *Vision One*) at the time it issued its September 29, 2014 coverage position letter:

> [T]he Court of Appeals found no coverage under the ensuing loss clause, reasoning that "[i]f faulty workmanship was the initial excluded peril, then the simultaneous collapse of the shoring and concrete slab was the loss. Had the collapse triggered a secondary covered peril, such as a fire, then damage caused by the fire would be covered as a resulting loss." *Vision One,* 158 Wash. App. at 108 n. 3, 241 P.3d 429. This analysis fails to consider that collapse is a covered peril under the policy. Many events can be characterized as both a loss and a peril. Characterizing collapse as the loss, rather than the peril, rests on a semantic distinction without a difference and ignores the policy's coverage for all risks, including those "[c]aused by collapse of the building."

52. Notwithstanding the Supreme Court's ruling in *Vision One,* FM determined it would impose the very same "secondary event" rule rejected in *Vision One,* and announced its position by letter to NPI dated September 29, 2014:

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 9

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

> All of the applicable Policy exclusions contain an exception if "physical damage not excluded by this Policy results" (the "resulting loss" exception) in which case "only that resulting damage is insured." FM Global's investigation to date raises substantial questions as to the existence of any such "resulting loss." FM Global's concern is that it appears there was neither a separate, non-excluded peril that resulted from the excluded faulty workmanship/materials and/or corrosion, nor was there damage to separate property.

53. The author of the September 29, 2014 letter couched it as a "concern" rather than as a "denial of coverage" due to an express and/or tacit agreement between FM representative Scott Stickney and NPI representative David Brenner, set in motion by Mr. Brenner's email to Mr. Stickney dated August 26, 2014:

> As I expressed at the meeting, leading up to the mediation between FSE and its insurers and NPI USA and its insurer FM on September 16, NPI USA wishes to preserve maximum flexibility with regard to positions on causation. *Accordingly, NPI USA would prefer not to have FM Global set forth a firm coverage position in writing at this point.* In that regard, NPI USA will not invoke any rights to receive a written statement of FM's position in this premediation period and will not raise any extracontractual arguments based on FM Global's not providing a written statement. NPI USA and FM should address the question of written communications concerning coverage after the mediation. (Emphasis added).

Both FM and NPI continue to engage in a mutual attempt to defer a formal coverage decision by FM so as to deny FSE its rights under the Waiver of Claims provision of the Contract, as well as under the policy itself.

### X. THE STEAM TURBINE DAMAGE

54. In September of 2014, NPI reported to FM that it had sustained damage to a steam turbine installed by FSE.

55. Pursuant to WAC 284-30-370, FM conducted a normal course "investigation" into the claim, as the term "investigation" is defined under WAC 284-30-320.

56. One of the activities FM performs in the determination of liabilities under

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 10

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

policies it issues is to make normal course of business interpretations of the provisions contained in its own policies.

57. FM determined that damage to a single piece of insured property is covered when one component of it causes non-excluded damage to another component of it.

58. In the case of the steam turbine, FM determined that the only thing damaged was the steam turbine, and that one component of the steam turbine had failed, causing damage to the rest of the turbine. FM's determination constitutes interpretation by conduct, and is entitled to "great if not controlling weight" on the issue of whether the ensuing damage clause in the FM policy does or does not require damage involving more than a single item of Covered Property.

59. FM determined that the damage to the steam turbine was covered under the policy, but that NPI had not established that the damage exceeded the policy deductible of $1.2 Million per occurrence.

60. The damage to the steam turbine is covered under the FM policy, and is subject to the Waiver of Claim provision of the NPI/FSE contract, whether or not the damage exceeds the deductible and whether or not the boiler cracking damage and the steam turbine damage constitute one occurrence or two.

### XI. NPI AND FM BREACHED CONTRACTUAL, GOOD FAITH AND FIDUCIARY OBLIGATIONS TO FSE IN CONNECTION WITH THE CLAIM FOR COVERAGE MADE TO FM

61. The policy NPI obtained through FM contained a "Privilege to Adjust With Named Insured" clause in it. NPI had duties under its contract with FSE and under statutory and common law to act on behalf of the interests of FSE (and Chanute) in good faith. NPI's actions violated its obligations to FSE.

62. While FM had the contractual right to adjust the boiler cracking loss directly with NPI, it had no right to abuse that clause. It did so in an attempt to sidestep the Waiver of

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 11

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

Claims provision of the Contract by artificially purporting to keep its investigation open, and by deferring a coverage decision until after NPI prosecuted its claim for boiler cracking damage against FSE. Both FM and NPI could reasonably foresee that the result of their scheme would be to cause FSE to incur the very litigation costs which the Waiver of Claims provision and the policy were designed to avoid.

### XII.   NPI'S CONTRACTUAL DUTY TO PROCURE INSURANCE

63.   Pursuant to the insurance procurement provisions of the NPI/FSE contract, NPI was obligated to procure insurance for "physical loss or damage" to the Work. No exceptions to this contractual requirement were authorized for damage to a single article of the Work, or for damage that may have involved human fault.

### XIII.   CAUSES OF ACTION

#### FIRST CAUSE OF ACTION—DECLARATORY JUDGMENT
#### (FM AND NPI)

64.   There is a clear and present dispute concerning the respective rights and obligations under the FM policy which is the subject of this suit. Pursuant to federal and/or state declaratory judgment statutes and law, FSE is entitled to declaratory judgment as follows:

   A. Declaring whether or not FSE is insured under the FM policy for some or all of the damage which is the subject of the NPI Counterclaim in Cause No. 3:145-cv-05899.

   B. Declaring whether or not coverage for some or all of the physical damage claimed in the NPI counterclaim is covered under the NPI policy;

   C. Declaring whether or not FM is barred from seeking, obtaining and/or pursuing any rights of subrogation against FSE;

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 12

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

D. Declaring whether or not FSE and Chanute have an insurable interest in the property insured under the FM policy.

E. Declaring whether or not FM and/or NPI breached RCW 48.01.030.

F. Declaring any and all other issues necessary for a full adjudication of the respective rights and obligations of all parties under the policies as respects the claim which is the subject of the NPI counterclaim in Cause No. 3:14-cv-05899 RJB.

G. Declaring whether or not the NPI/FSE contract contained an implied duty of good faith dealing such that NPI was prohibited from dealing with FM as Named Insured in such a fashion as to injure FSE and its interests under the contract and policy.

H. Declaring whether or not FM breached WAC 284-30-330, 350, 360, 370 and/or 380.

I. Declaring whether or not FM breached the Washington Consumer Protection Act.

J. Declaring whether or not the damage to the Steam Turbine is covered, and whether it is a separate occurrence from that of the boiler cracking.

K. In the sole event the court declares that there is no coverage for the damage to FSE's Work under the policy language actually procured by NPI, FSE seeks a declaration that NPI breached the duty to procure provision of the NPI/FSE contract.

### SECOND CAUSE OF ACTION—BREACH OF CONTRACT
### (FM AND NPI)

65. FM and NPI have each breached their contract obligations to FSE, and are liable for money damages proximately caused by their respective breaches, in an amount to be proven at time of trial.

**THIRD CAUSE OF ACTION—BREACH OF DUTY OF GOOD FAITH DEALING**
**(FM AND NPI)**

66.  FM and NPI have each breached the duty of good faith dealing, and are liable in tort for damages in an amount to be proven at time of trial. By way of example and not by way of limitation, FM had and has a good faith obligation to FSE to disclose to it that FSE's interests were covered under the policy, and that one of the benefits conferred to FSE under the Policy was a waiver of claim for all damages covered under the Policy. By way of example and not by way of limitation, NPI was obligated to adjust the boiler cracking loss with FM without self-dealing, and without overt efforts to deprive FSE of the very contractual risk allocation promised in the NPI/FSE contract.

**FOURTH CAUSE OF ACTION—NEGLIGENCE**
**(FM AND NPI)**

67.  As a proximate result of its negligence, FM has exposed FSE to litigation over damage covered under its Policy, which damage was intended by both FSE and NPI to be insured under the Policy and not subject to subrogation. By its negligent and/or deliberate conduct, NPI has sought to deprive FSE of policy benefits promised under the FM policy, and protection from litigation over damage to boiler facility components, as contemplated in the FSE/NPI contract. FSE has been damaged by its costs of responding to the NPI counterclaim, and by the loss of earned contract revenues NPI has set off in payment of damages covered under the FM Policy.

**FIFTH CAUSE OF ACTION—BREACH OF WASHINGTON CONSUMER PROTECTION ACT**
**(FM)**

68.  The conduct set forth herein constitutes multiple violations of the Washington Consumer Protection Act, entitling FSE to damages as provided under RCW 19.86.090, in an amount to be proven at time of trial, including trebling of damages as allowed by statute, and reasonable attorney's fees.

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 14

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900 F. 206.344.7400

**SIXTH CAUSE OF ACTION—CONTINGENT CLAIM FOR BREACH OF DUTY TO PROCURE (NPI)**

69. Solely in the event FSE is determined to have lesser rights under the FM policy than it would have had NPI had procured insurance in accordance with the contractually mandated procurement terms, FSE will be entitled under *Coluccio v. King County* and other law to recover damages proximately caused by NPI's breach, in an amount to be proven at trial.

### XIV. DEMAND FOR JURY

Pursuant to Fed. R. Civ. P. 38 and LCR 38, FSE hereby demands trial by jury.

### XV. PRAYER FOR RELIEF

WHEREFORE, FSE prays for judgment against defendants as follows:

A. For declaratory judgment binding all defendants, as more specifically pled herein;

B. For monetary damages in an amount to be proven at trial;

C. For treble damages as allowed by statute;

D. For prejudgment interest;

E. For actual and reasonable attorneys' fees pursuant to *Olympic Steamship v. Centennial,* the Washington Consumer Act, recognized grounds of equity, and or other law, and for actual costs pursuant to *McGreevy v. Oregon Mutual* and other applicable law*;*

F. For FSE's costs of conducting a reasonable investigation, pursuant to *Coventry v. American States,* and other applicable law;

G. For such other and further relief as the court may find just and equitable.

1

2  DATED: March 4, 2015.

3  ASHBAUGH BEAL LLP

4

5  By: *s/ Tristan N. Swanson*
   Tristan N. Swanson, WSBA #41934
   e-mail: tswanson@ashbaughbeal.com
6  701 5th Avenue, Suite 4400
   Seattle, WA 98104
7  *Attorneys for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT FOR DECLARATORY RELIEF AND
MONETARY DAMAGES - 16

Ashbaugh Beal
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400