1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

9

| | |
|---|---|
| FACTORY SALES AND ENGINEERING, INC. d/b/a FSE ENERGY, a Louisiana corporation,<br><br>                                        Plaintiff,<br><br>                    vs.<br><br>FACTORY MUTUAL INSURANCE COMPANY, a Rhode Island Corporation; and NIPPON PAPER INDUSTRIES USA CO., LTD, a Washington corporation,<br><br>                                        Defendants. | No. 3:15-cv-05131-RJB<br><br>ORDER ON DEFENDANT FACTORY MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF FACTORY SALES AND ENGINEERING'S AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)(1) AND 12(B)(6) |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

        THIS MATTER comes before the Court on a motion to dismiss by Factory Mutual

Insurance Company ("FM Insurance"). Dkt. 22. The Court has reviewed Plaintiff's responsive

briefing and the remainder of the file therein. Dkt. 25, 31.

        I.        BACKGROUND

        According to the Complaint, a biomass power facility owned and operated by

defendant, Nippon Paper Industries ("Nippon"), contracted with plaintiff, Factory Sales and

Engineering, d/b/a FSE Energy ("FSE"), for the "design, manufacture, shipping, erection and

successful testing" of a biomass boiler. Dkt. 14, at 1, 2. FSE alleges that, per the terms of a

contract between FSE and Nippon ("the Contract")(Dkt. 23-1), Nippon was obligated to purchase and maintain property insurance and to pay related costs not covered by the insurance deductible. *Id*., at 3. *See* Dkt. 23-1, at 14-17. The Contract, quoted at length in the Complaint, also contains a "Waivers of Subrogation" provision. Dkt. 23-1, at 17.

The Complaint also alleges that, as required by the Contract, Nippon purchased a builders' risk insurance policy ("the Policy")(Dkt. 23-2). Dkt. 14, at 4. *See* Dkt. 23-1, at 15, 16. FM Insurance issued the one-year policy to cover the "insured location . . . to the extent of the interest of the Insured in such property." Dkt. 23-2 at 16. The Policy also "insures the interest of contractors and subcontractors in insured property during construction at an insured location . . . to the extent of the Insured's legal liability for insured physical loss or damage to such property." *Id*.

The Complaint alleges that, as required by the Contract, FSE undertook the installation of a "mud drum," which was fabricated by a subcontractor, Optimus Industries LLC, d/b/a Chanute Manufacturing Company ("Chanute"). Dkt. 14, at 3, 5. For reasons contested by the parties, the mud drum caused damage to Nippon's boiler. *Id*., at 6. *C.f.*, Dkt. 16, at 16. FSE made claim for payment to FM Insurance "under the Policy," which FM Insurance refused. *Id*., at 7.

Against FM Insurance, FSE seeks (1) a declaratory judgment on eleven discrete issues, and (2) damages for negligence, Washington Consumer Protection ("CPA") and Washington Insurance Fair Conduct Act ("IFCA") violations, and breach of contract and good faith dealing claims. Dkt. 14, at 12-16. FSE has also filed suit against Nippon and Chanute in a related action. W. D. Wash. Dist. Ct. Case No. 3:14-CV-05899-RJB. Dkt. 1, 28.

For the sake of judicial economy, the Court does not quote the Contract (Dkt. 23-1) or the Policy (Dkt. 23-2) at length, but will rely on both documents in its analysis.

## II.     DISCUSSION

The focus of FM Insurance's argument is FSE's standing, which FM Insurance raises under Fed.R.Civ.P. 12(b)(1) and Fed. R. Civ. Pr. 12(b)(6). *See* Dkt. 22. Accordingly, the Court directs its attention to this threshold issue, which FM Insurance properly raised as a Fed.R.Civ.P. 12(b) motion. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). *See, e.g., Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) (statutory standing raised as Fed.R.Civ.P. 12(b)(6) motion to dismiss); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 (9th Cir. 2003) (constitutional standing raised as Fed.R.Civ.P. 12(b)(1) motion to dismiss).

FM Insurance argues that FSE lacks standing because FSE is neither an Insured, Named Insured, nor a third-party beneficiary of the Policy. Dkt. 22, at 7, 11-21. Furthermore, FM Insurance contends, FSE is not named as an Additional Insured, but even if so, FSE has not pleaded the existence of a Certificate of Insurance or the equivalent, as required by the Policy. *Id*., at 9. *See* Dkt. 23-2, at 7. Finally, FSE is not a co-insured, according to FM Insurance, because there is no evidence of mutual intent by Nippon and FM Insurance that FM Insurance would assume a direct obligation to FSE. *Id*., at 15-18. FM Insurance's reply briefing mostly reiterates its prior arguments that FSE is not an Insured, co-insured, or third-party beneficiary, but also responds to FSE's arguments about specific types of claims and interpretation of the subrogation clause in the Contract. *See generally*, Dkt. 31.

FSE argues firstly that FSE has standing because FSE has an insurable interest both under the plain terms of the Policy and under Washington law. Dkt. 25, at 7-10. *See* RCW

48.18.040 and 48.18.050. FSE also argues that FSE is an Insured under the Policy; that

Nippon and FM Insurance intended FSE to be a third-party beneficiary; and that FSE is a co-

insured because Nippon and FM Insurance waived their subrogation rights by the Contract.

*Id.*, at 10-19. FSE does not argue that FSE is an Additional Insured as defined in the Policy.

*See generally, id.*

        While there is no question that a party seeking to enforce a contract must have

standing, in this case whether FSE has standing turns on the Court's interpretation of the

Policy. Under Washington State law, "the interpretation of language in an insurance policy is

a matter of law." *Moeller v. Farmers Ins. Co. of Wash.,* 173 Wn.2d 264, 267 (2011). "If the

language in an insurance contract is clear and unambiguous, the court must enforce it as

written and may not modify the contract or create ambiguity where none exists." *Transcon.

Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.,* 111 Wn.2d 452, 455 (1988). Nevertheless, "the

contract as whole must be read as the average person would read it; it should be given a

practical and reasonable rather than a literal interpretation, and not a strained or forced

construction leading to absurd results." *Moeller,* 267 P.3d at 1002 (citations and quotations

omitted). Any undefined terms should be "given their ordinary and common meaning, not

their legal, technical meaning." *Moeller,* 267 P.3d at 1002. "Exclusionary clauses are to be

most strictly construed against the insurer." *Vadheim v. Cont'l Ins. Co.,* 107 Wash.2d 836, 839

(1987).

        After careful consideration of the Policy in its entirety, the Court concludes that the

most reasonable and practical interpretation of the Policy creates an insurable interest for

contractors, including FSE. The Policy is unambiguous when it states that "[t]his Policy also

insures the ***interest of contractors*** and subcontractors ***in insured property during***

*construction* at an insured location[.]" Dkt. 23-2, at 16 (emphasis added). On its own terms then, the Policy plainly creates an insurable interest for contractors, and FSE is undisputedly a contractor.

This interpretation is further supported by the broader context of the section entitled "Property Damage," in which the above provision is found. *Id*., at 16. After creating an insurable interest for contractors, *see supra*, the Policy goes on to specify the limits of the liability for contractors and subcontractors, confining them "to the extent of the Insured's legal liability for insured physical loss or damage to such property. Such interest . . . is limited to the property for which they have been hired to perform work[.]" *Id*. Reading "Insured" as referring to Nippon (*see* Dkt. 23-2, at 7, "Nippon . . . hereafter referred to as the 'Insured'"), the Property Damage provision thus covers damage to the insured property caused by both FSE and Nippon.

In sum, the Policy creates an insurable interest for contractors, including FSE. The Court will now direct its attention to analyzing the type of insured interest in the Policy FSE possesses: whether FSE is a Named Insured, Insured, Additional Insured, co-insured, or third-party beneficiary. The type of interest may be dispositive as to whether a party has standing under a policy for specific claims. *See, e.g.,Tank v. State Farm & Cas. Co.,* 105 Wn. 2d 381, 393 (1986) (no standing for third-party claimant against insurer for breach of fiduciary duties because no fiduciary duty owed to third-party).

a.   Insured and Named Insured (Dkt. 22, at 7-9)

FM Insurance argues that FSE is neither a Named Insured nor an Insured under the Policy, because the Policy designates Nippon only as a Named Insured, and immediately thereafter specifies that Nippon is "hereafter referred to as the 'Insured.'" Dkt. 22, at 7-9. *See*

Dkt. 23-2, at 4, 7. FSE does not argue that FSE is a Named Insured, but according to FSE, even if FSE is not expressly identified as an Insured in the policy, FSE is an Insured because it has an insurable interest in the insured property. Dkt. 25, at 10-14.

Although used throughout the Policy, the terms "Named Insured" and "Insured" are not defined in the definitions section of the Policy. *See* Dkt. 23-2, at 69-75. However, the relevant portion names only Nippon (and its subsidiaries) in a provision entitled, "NAMED INSURED AND MAILING ADDRESS." By any reasonable interpretation of the Policy, Nippon is the only Named Insured.

After the Policy lists Nippon as the Named Insured, the same provision of the Policy states that Nippon is "hereafter referred to as the 'Insured.'" Dkt. 23-2, at 7. Thereafter, the term "Insured" is used multiple times, but the term "Named Insured" is not used anywhere else in the Policy. *See generally*, Dkt. 23-2. Given this context, the best-supported interpretation of "Insured" refers only to Nippon. FSE's argument that FSE is an Insured because it has an insurable interest flows against the syntax of the relevant portion of the Policy, which differentiates between Insured and the interest of contractors with separate sentences and paragraphs. *See* Dkt. 23-2, at 16. Therefore, according to the Policy, FSE lacks standing to enforce the Policy either as a Named Insured or an Insured.

      b.  <u>Additional Insured</u> (Dkt. 22, at 9, 10)

FM Insurance contends that FSE is not an "Additional Insured," as defined by the Policy. The Policy states how interests of an Additional Insured is created: "when named as an additional named insured . . . either on a Certificate of Insurance or other evidence on file[.]" Dkt. 23-2, at 7 (emphasis added). FSE does not argue that FSE is actually named as an Additional Insured either somewhere in the Policy or on a Certificate of Insurance or other

documentation. *See* Dkt. 14, 25. Because FSE is not named as an Additional Insured in any relevant documentation, it is not an Additional Insured under the terms of the Policy. *See Polstelwait*, 106 Wn.2d at 100, 101. *C.f., e.g., NCF Fin., Inc. v. St. Paul Fire & Marine Ins. Co.*, 137 Wn. App. 1016 (2007)(unpublished)(standing to sue as additional insured when named in insurance policy). Accordingly, FSE does not have standing to enforce the Policy as an Additional Insured.

       c.   <u>Co-insured (Dkt. 22, at 15-17; Dkt. 25, at 18, 19; Dkt. 31, at 7, 8)</u>

FSE argues that FSE is a co-insured because Nippon and FM Insurance waived claims and subrogation rights against FSE through a subrogation clause in the Policy. Dkt. 25, at 18. *See* Dkt. 23-2, at 63; Dkt. 23-1, at 17. In relevant part, the subrogation clause reads that "[FM Insurance] will not acquire any rights of recovery that the Insured has expressly waived prior to a loss[.]" Dkt. 23-2, at 63. FSE points to *Johnny's Seafood v. City of Tacoma*, 73 Wn. App. 415 (Div. 2, 1994), as its authority for the argument that the term "co-insured" does not necessarily apply to named insureds, but may also apply to others for whose benefit the policy was written. Dkt. 25, at 18.

According to FM Insurance, the term "co-insured" is used for purposes other than determining whether a party is insured, including, as in *Johnny's Seafood*, for the purpose of applying the Anti-Subrogation Rule to preclude claims by an insurer against a third-party. Dkt. 22, at 15-17. *See Johnny's Seafood*, 73 Wn. App. at 422-23. Furthermore, FM Insurance contends, the Policy's subrogation clause does not make FSE, an entity against which subrogation is waived, an "Insured." *Id*.

FSE's reliance on the subrogation clause of the Policy is misguided, because nothing in the clause, on its plain terms, makes FSE a co-insured. *See* Dkt. 23-2, at 63. The only issue

is whether the Policy, read as a whole, shows the parties' mutual intent to make FSE a co-insured. The Court must find in the negative, because, like *Johnny's Seafood*, this case is distinguishable from *Gen. Ins. Co. of Am. v. Stoddard Wendle Ford Motors*, 67 Wash. 2d 973, 979 (Div. 1, 1966).

In *Johnny's Seafood*, the court cited the general rule from *Stoddard*: even where a party is not a named insured, that party may still be a co-insured if the policy was written for the actual benefit of that party. *Johnny's Seafood*, 73 Wn. App. at 422-23, citing *Stoddard*, at 979. In *Stoddard*, a case stemming from a lawsuit between a buyer and a seller, the court held that the buyer's insurer's subrogation claim against the seller was barred because the insurance policy buyer's insurance policy was for the "actual benefit" of the seller (as well as the buyer). *Stoddard*, **67 Wn.2d at 978–79**. In *Johnny's Seafood*, the court distinguished *Stoddard*, pointing to two significant factual differences of *Stoddard* that, in that case, weighed in favor of a finding that the seller was a co-insured along with the buyer: (1) although not named as a loss payee on the insurance policy itself, the seller was specifically listed as a named insured on the insurance policy's cancellation notice; and (2) the seller's agent was specifically listed as a named insured in the policy itself. *Id.*, 73 Wn. App. at 423.

*Stoddard* is similarly distinguished in this case. Although FSE may benefit from the Policy (see third-party beneficiary analysis below), there is no indication that the Policy was written for the actual benefit of FSE as contemplated in *Stoddard*, because neither FSE nor any agent of FSE is named anywhere in the Policy or related correspondences from FM Insurance. *See* Dkt. 23-1, 23-2. FSE lacks standing under the Policy as a co-insured.

d.  <u>Third-party beneficiary (Dkt. 22, at 11-15; Dkt. 25, at 15-17; Dkt. 31, at 8-10)</u>

In *Postlewait Const., Inc. v. Great Am. Ins. Co.*, 106 Wn. 2d 96, 99-100 (1986), the court analyzed whether an unnamed third-party beneficiary to an insurance policy could directly sue an insurance company for alleged breaches of the insurance policy. In its determination, the court analyzed the intent to benefit a third party: "The test of intent is an objective one; the key is not whether the contracting parties had an altruistic motive or desire . . . but rather, 'whether performance under the contract would necessarily and directly benefit' that party." *Id.*, at 99 (emphasis added)(quoting from *Lonsdale v. Chesterfield*, 99 Wn.3d 353, 385 (1983). To determine the contracting parties' intent, courts are to first consider the plain meaning of terms as used or defined within the four corners of the contract, but they may consider extrinsic evidence where helpful in ascertaining the parties' intent. *Berg v. Hudesman*, 115 Wn. 2d 657, 667 (1990). Extrinsic evidence "cannot change the plain meaning of a writing, but meaning can almost never be plain except in context." *Id.*, at 668.

As an insurer, FM Insurance is a sophisticated party, free to insure who it may with carefully negotiated terms. *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 335 (1972). As discussed above, the Policy plainly extends coverage to contractors generally, which includes FSE. *See* Dkt. 23-2, at 16 ("This policy also insures the interest of contractors . . . in insured property during construction at an insured location[.]"). FSE has an insurable interest. *See infra*. However, neither FSE nor FSE's agent is listed anywhere in the Policy, so any benefit to FSE is derivative of the Policy's coverage of the insured property. This is particularly the case where the Policy deliberately names only Nippon as the Policy's Named Insured and specifies that the Named Insured will thereafter be referred to as Insured. Dkt. 23-

2, at 7. *See supra*. The Policy makes FSE a third-party beneficiary, not a co-insured. *See Stoddard*, 67 Wn.2d at 978–79.

Even if the Policy were not clear in its intent to make FSE a third-party beneficiary, extrinsic evidence, the Contract language reinforces this intent. Dkt. 23-1, at 15, 16. *See Berg*, 115 Wn. 2d at 667. The Contract, an integrated agreement between Nippon and FSE, states that "[Nippon] has purchased and will maintain at its expense throughout the duration of the work, Builder's Risk property insurance on an "all-risk" or equivalent policy[.]" Dkt. 23-1, at 15. In addition to the terms of the Policy, the terms of the Contract indicate an intent to benefit FSE as a third-party beneficiary.

\* \* \*

As a third-party beneficiary to the Policy, FSE's standing to enforce specific claims depends on the claim. For example, had FSE asserted an intentional tort against FM Insurance, FSE would have standing as a third-party. *Dussault ex rel. Walker-Van Buren v. Am. Int'l Grp., Inc.*, 123 Wn. App. 863, 869-71 (2004). In this case, FSE's claim for Breach of Duty of Good Faith Dealing (Count III) is disposed of, because the duty FM Insurance owed was personal to its insured, Nippon, and not to third-party beneficiaries. *Id*. The Negligence claim (Count IV) and Breach of Contract claim (Count II) fail for the same reason, *Tank*, 105 Wn.23 at 385, 392–95.

The CPA claim (Count VI) is insufficient as a matter of law and should be dismissed. As articulated in *Tank*, third-parties cannot bring per se CPA claims against an insurer, because "[t]he enforcement of [the CPA] on behalf of third parties should be the province of the Insurance Commissioner, not individual third party claimants." *Tank*, 105 Wn. 2d at 393, 394. *Tank* specifically did not reach the issue of whether non-per se CPA claims could be

raised by third-parties, *id*. (citing to dicta in *Transamerica Title Ins. Co. v. Johnson,* 103

Wash.2d 409, 418 (1985)), but at least one Court has interpreted *Tank* more broadly to

preclude CPA claims by third-parties in general. *See Trinity Universal Ins. Co. of Kansas v.*

*Ohio Cas. Ins. Co.*, 176 Wn. App. 185, 201 (Div. I, 2014).  Even so, this Court need not

decide the unresolved issue in *Tank*, because, as to the CPA claim (Count VI), FSE also fails

to state a claim. *See* Fed.R.Civ.P. 12(b)(6). The CPA allegation reads in its entirety that "the

conduct set forth herein constitutes multiple violations of the Washington Consumer

Protection Acting, entitling FSE to damages . . ." Dkt. 14, at 15. FSE's CPA claim is

conclusory and lacks specificity even as to which type of CPA violation occurred. *See*

Fed.R.Civ.P. 12(b)(6). Next, the logic of *Tank* as to CPA claims has been extended to

Insurance Fair Conduct Act claims, and for this reason, the IFCA claim (Count V) should also

be dismissed. *Id*., at 200-03.

       Unlike the other claims, FSE's claim for Declaratory Judgment, Count I, should not be

dismissed. It is not clear to the Court whether FSE seeks declaratory relief under state or

federal law ("pursuant to federal and/or state . . . law"), but that is of no consequence, because

FSE has standing under both. Under Washington law, FSE, as a third party to an insurance

policy, has standing to bring claims under Washington's Uniform Declaratory Judgments Act.

RCW 7.24. *See, e.g., Glandon v. Searle*, 68 Wn. 2d 199, 202 (1966). FSE also has standing

under the federal statutory equivalent, the Declaratory Judgment Act, 28 U.S.C. § 2201,

because FSE meets the Article III "cases" or "controversies" requirement. Standing is a core

component of the cases or controversies requirement, satisfied when a plaintiff shows an

injury in fact caused by "the conduct complained of" that will be "redressed by a favorable

decision." *Camreta v. Greene,* 131 S.Ct. 2020, 2028 (2011)(*quoting Lujan v. Defenders of*

*Wildlife,* 504 U.S. 555, 560-561 (1992); *Barnum Timber Co. v. U.S. E.P.A.,* 633 F.3d 894, 897 (9th Cir. 2011). Taking the facts alleged in the Complaint as true, FSE has standing for its declaratory relief request under federal law: FSE has an insurable interest, *see supra*, and FSE has made the proper showing of a redressable injury, for example, in seeking the Court's judgment as to whether FM Insurance may bring a subrogation action against FSE. In summary, FM Insurance's motion should be denied as to FSE's claim for declaratory judgment (Count I), but should be granted as to all other claims against FM Insurance.

Both parties set forth many a paragraph about reconciling RCW 48.18.040 and RCW 48.18.050. Dkt. 25, at 7-10, 19; Dkt. 31, at 4-7. RCW 48.18.040 provides that "No contract of insurance . . . shall be enforceable except for the benefit of persons having an insurable interest," defining "insurable interest" as "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, or pecuniary damage." RCW 48.18.040. RCW 48.18.050 states that, "When the name of a person intended to be insured is specified in the policy, such insurance can be applied only to his or her own proper interest." RCW 48.18.050.

FSE reads RCW 48.18.050 to mean that only FSE (as a "Named Insured") can enforce FSE's interests, to the exclusion of all others. Dkt. 25, at 7-10. FSE's interpretation ignores situations, such as the present case, where parties' interests may overlap, and parties may agree to assign or waive their interests. *See, e.g.,* Dkt. 23-1, at 17; Dkt. 23-2, at 70. FM Insurance reads RCW 48.18.050 as limiting coverage of all insurance policies to only those both intended and specified within the policy. Dkt. 31, at 4-7. This interpretation precludes *any* action *ever* against an insurer by everyone not specifically and deliberately mentioned in an insurance policy. Along with contravening obvious public policy concerns, this

interpretation also conflicts with the related statute, RCW 48.18.040. *See* RCW 48.18.040 (insurance policy enforceable as to any party with lawful and substantial economic interest). The better reading of RCW 48.18.050, which harmonizes it with RCW 48.18.040, interprets the statute to mean that whenever it is intended that a party be specified within an insurance policy, that party's interest in the policy is created by the policy's terms. Putting the two statutes together, they can be read together to mean that all insurable interests, whether they be economic or otherwise, are created according to insurance policies' terms. It is for this reason that the Court began its analysis with the Policy itself. *See supra.*

### III.    CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant's Motion to Dismiss (Dkt. 22) is **DENIED** in part as to Count I, and that claim may proceed. The motion is **GRANTED** in part as to Counts II, III, IV, V, and VI, and those claims are dismissed.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 18th day of June, 2015.

ROBERT J. BRYAN
United States District Judge

ORDER - 13